IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVEN DALE PERCELLE,

    Plaintiff,

    v.

S. PEARSON, et. al.,

    Defendants.

NO. C12-5343 TEH

ORDER GRANTING MOTION TO DISMISS

This case is before the Court on Defendants' motion to dismiss the complaint for failure to state a claim and failure to exhaust administrative remedies. Having carefully considered the parties' written arguments, the Court now GRANTS the motion without prejudice.

**BACKGROUND**

Plaintiff Steven Dale Percelle is a former state prisoner who filed this action *pro se* while incarcerated at the Correctional Training Facility ("CTF") in Soledad, California. He sues eight CTF employees for civil rights violations and alleges the following facts:

On June 23, 2010, he obtained a judgment against the CDCR in the amount of $550,000 for violations of his civil rights. Complaint ("Comp.") ¶ 9. On November 18, 2010, Defendants Pearson, Williams, and Arrendono initiated a search of the Plaintiff's cell. *Id.* ¶ 10. Defendants confiscated Plaintiff's personal address book and a prison library photocopy of the book *Blood in My Eye*, by George Jackson. *Id.* On November 19, 2010, Defendant Arrendono wrote in a report that *Blood in My Eye* is a book that only prison gang members would possess, and that Plaintiff's address book contained the addresses of "known" members of the Black Guerrilla Family ("BGF"), both of which constituted

evidence of gang membership. *Id.* ¶ 11. On August 27, 2011, Defendants Pearson and Fletcher authored a memorandum declaring Plaintiff a prison gang member. *Id.* ¶ 18. On December 15, 2011, Defendants Jefferson and Brode officially validated Plaintiff as a member of the BGF prison gang. *Id.* ¶ 19. On January 23, 2012, pending review by CTF's Institutional Classification Committee ("ICC"), Plaintiff was moved to administrative segregation ("Ad-Seg") housing. *Id.* ¶ 21.

On January 26, 2012, Plaintiff appeared before the ICC, chaired by Defendants White and Maughmer, for a review of the evidence used to validate him. *Id.* ¶ 22. His validation was upheld. *Id.* ¶ 22. On March 4, 2012, Plaintiff filed administrative appeal CTF-12-00502, challenging his validation. *Id.* ¶ 23. On August 1, 2012, the administrative appeal was denied at the third and final level, thereby exhausting all administrative remedies within the CDCR. *Id.* ¶ 21. Plaintiff now sues under 42 U.S.C. § 1983, alleging that his validation and placement in Ad-Seg violated his right to due process under the Fourteenth Amendment and his right to be free from retaliation under the First Amendment.

Plaintiff was released from prison on March 23, 2013, and retained counsel shortly thereafter. Docket Numbers 23 & 34. Counsel did not file an amended complaint but filed an opposition to the present motion.

**LEGAL STANDARD**

Defendants move to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b) for failure to exhaust and 12(b)(6) for failure to state a claim.

Rule 12(b)(6) provides for the dismissal of a complaint when it fails "to state a claim upon which relief can be granted." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim may fail due to "a lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted). When considering a motion to dismiss, a court must accept all factual allegations as true and read them in the light most favorable to

the non-moving party. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

A prisoner is required to exhaust all available administrative remedies provided by the prison. 42 U.S.C. § 1997e(a). The failure to exhaust nonjudicial remedies that are not jurisdictional is treated as a matter in abatement and is subject to an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1109, 1119 (9th Cir. 2003) (citation omitted). Defendants have the burden of raising and proving the absence of exhaustion. *Id.* Generally, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks and citation omitted). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved." *Id.* The proper disposition of unexhausted claims is dismissal without prejudice. *Wyatt*, 315 F.3d at 1120.

**DISCUSSION**

Plaintiff brings claims under 42 U.S.C. § 1983, which provides a remedy for violations by a person acting under color of state law of rights secured by the Constitution and laws of the United States. *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted). Defendants argue that the Plaintiff fails to allege conduct that deprived him of either his right to due process or his First Amendment right to be free from retaliation. Defendants also argue that Plaintiff's retaliation claim is unexhausted. The Court considers the due process and retaliation claims in turn, and concludes that the claims are exhausted but that Plaintiff fails to state a claim of either a due process violation or retaliation.

3

### 1. Due Process Claim

Liberty interests of prison inmates protected by the Fourteenth Amendment may arise from two sources: the Due Process Clause itself or the laws of the States. *Hewitt v. Helms,* 459 U.S. 460, 466 (1983). The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A state statute or regulation may create a right which triggers due process protection "to insure that the state-created right is not arbitrarily abrogated." *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974). A state-created liberty interest may be infringed by (1) a deprivation which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) state action that "will inevitably affect the duration of [a] sentence." *Sandin v. Conner,* 515 U.S. 472, 484-87 (1995). A state may not impose such deprivations without complying with minimum requirements of procedural due process. *See id.* at 484; *Wolff*, 418 U.S. at 563.

Defendants argue that Plaintiff's due process claim fails because his complaint shows that he was afforded both substantive and procedural due process.

**Substantive Due Process**

Plaintiff argues that his placement in Ad-Seg constitutes an atypical and significant hardship and/or extended his sentence by depriving him of the ability to earn good time credits toward early release. Defendants argue that no cognizable deprivation is alleged.

The Supreme Court has held that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. The Ninth Circuit has further held that "a liberty interest does not arise even when administrative segregation imposes severe hardships such as denial of access to vocational, education, recreational and rehabilitative programs, restriction on exercise, and confinement to [one's] cell for lengthy periods of time." *Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986) ("*Toussaint IV*") (internal quotation marks and citation omitted), *abrogated in part on other grounds by Sandin*, 515

4

U.S. 472. Plaintiff cites *Wilkinson v. Austin*, which held that a prisoner's indefinite confinement in a "supermax" prison – where he was subjected to light that was on for twenty-four hours per day, conversation was prohibited, and he was only allowed one hour of exercise in a small indoor room – constituted an atypical and significant hardship. *See* 545 U.S. at 223-24. However, *Wilkinson* does not apply here, where Plaintiff was moved to Ad-Seg housing, not to a supermax facility. Under *Toussaint IV*, Plaintiff's complaint fails to allege the deprivation of a cognizable liberty interest. *See* 801 F.2d at 1092.

Plaintiff next argues that his placement in Ad-Seg extended his sentence because it led to his placement in the Segregated Housing Unit ("SHU"), which deprived him of the opportunity to earn good-time and work-time credit. Defendants do not respond. However, California and federal law clearly establish that there is no right to work credits. *See, e.g.,* Cal. Penal Code § 2933(c) ("Work time credit is a privilege, not a right."). The California legislature created only a "reasonable opportunity to participate" in work credit programs. *Id.*; *see also Toussaint IV*, 801 F.2d at 1095 ("section 2933 does not create a liberty interest in one-for-one work time credits"). Thus, Plaintiff has not alleged the deprivation of a cognizable liberty interest.

**Procedural Due Process**

Plaintiff next argues that he was denied procedural due process because he was not afforded a chance to inspect the evidence used to validate him and was not permitted to raise his claim of retaliation.

The amount of procedural protection required depends on the setting. *See Wolff*, 418 U.S. at 560-61; *Toussaint IV*, 801 F.2d at 1098-99. In the present context, the prison was required to base its validation decision on "some evidence." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). In addition to having "some evidence," the prison needed to provide Plaintiff with "'some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to

administrative segregation.'" *Ylst*, 351 F.3d at 1287 (quoting *Toussaint IV*, 801 F.2d at 1099).

This requirement of notice and a hearing demands that a prisoner "have an opportunity to present his views to the official charged with deciding whether to transfer him to administrative segregation." *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990) ("*Toussaint V*") (internal quotation marks and citation omitted). The "some evidence" standard requires "some indicia of reliability of the information that forms the basis" of the prison's action. *Id.* (internal quotation marks and citation omitted). However, the "some evidence" standard will be met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. *Toussaint IV*, 801 F.2d at 1105 (internal quotation marks and citation omitted). To evaluate whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or a weighing of the evidence. *Id.* (internal quotation marks and citation omitted). Instead, the standard is a "generous" one, which takes into account the prison administrator's "experience and awareness of general prison conditions." *Toussaint V,* 926 F.2d at 802.

Regarding the notice and hearing requirements, Plaintiff here received notice that an investigation had been initiated into his alleged membership in the prison gang BGF and was given a description of the address book and library book that were considered to demonstrate his gang membership. Comp. ¶¶ 10-11. He was placed in Ad-Seg, pending his review by the ICC, on January 23, 2012. *Id.* ¶ 21. On January 26, 2012, Plaintiff had a hearing before the ICC for a review of the gang validation evidence. *Id.* ¶ 22. Plaintiff's complaint does not allege that the hearing was defective or that he was denied an opportunity to speak at the hearing. Thus, according to the facts alleged in the complaint, Plaintiff received both notice and a hearing.

With regard to the "some evidence" requirement, prison officials relied on Plaintiff's possession of the addresses of some "known" BGF members and the George Jackson book found in Plaintiff's cell. The Court agrees that the sufficiency and reliability of this evidence

6

is questionable. However, "What is 'some evidence' in this context is pointedly distinguished by the Supreme Court from the kind of evidence that would be required by due process 'in less exigent circumstances.'" *Toussaint V,* 926 F.2d at 802 (quoting *Superintendent v. Hill*, 472 U.S. at 455-456); *see also Munoz v. Rowland,* 104 F.3d 1096, 1098 (9th Cir. 1997) ("the assignment of inmates within the California prisons is essentially a matter of administrative discretion"). In *Hill*, for instance, the Court stated that "[a]lthough the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." 472 U.S. at 457. So too here, the record is not "so devoid of evidence that the findings of the [ICC] were without support or otherwise arbitrary." *Id.* In short, there is "some evidence" that could support the conclusion that Plaintiff was a BGF member, although admittedly, the evidence could also support the opposite conclusion. *Cf. Hill*, 472 U.S. at 455-57.

For the foregoing reasons, Plaintiff fails to allege the deprivation of a cognizable liberty interest or the denial of procedural due process. His due process claim is therefore DISMISSED WITHOUT PREJUDICE.

**2. Retaliation Claim**

**A. Exhaustion**

Before a prisoner-plaintiff may bring a claim in court, he must exhaust all available administrative remedies provided by the prison. 42 U.S.C. § 1997e(a). Here, the parties dispute whether Plaintiff's grievance number CTF-12-00502, challenging his gang validation, was sufficient to exhaust with regard to the retaliation claim.

"[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120 (internal quotation marks and citation omitted); *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010).[1] The grievance need not include legal

---

[1] This is because California does not specify the level of detail that is required. *See Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010); *Sapp*, 623 F.3d at 824.

7

terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Griffin*, 557 F.3d at 1120. Nor does the grievance need to include every fact necessary to prove the prisoner's legal claim; rather, it must only provide enough information so that prison officials have an opportunity to address the particular problem. *Id.*

Here, Plaintiff pursued appeal number CTF-12-00502, challenging his validation. He now adds a claim that the validation was retaliatory, in violation of his First Amendment rights. The retaliation claim focuses on the same validation process and resulting confinement in Ad-Seg housing that Plaintiff challenged in the grievance. Although the grievance did not mention the legal theory of retaliation, it nonetheless provided enough information about the problem to allow prison officials to take appropriate responsive measures; *ie*, by reexamining the basis for Plaintiff's validation and confinement in Ad-Seg. *See id.* ("Griffin's problem concerned his unsatisfactory bunking situation[;] [n]otifying the prison of that problem did not require him to allege that the problem resulted from deliberate indifference."). Accordingly, the Court finds that Plaintiff's appeal number CTF-12-00502 was sufficient to exhaust for purposes of the present retaliation claim.

### B. Merits

In the prison context, a claim of retaliation under the First Amendment requires: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff has the burden of demonstrating that the protected conduct was a "motivating" or "substantial" factor in each defendant's conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (internal quotation marks and citation omitted). The parties dispute the second (nexus) and fifth (legitimate correctional goal) factors.[2]

---

[2] Defendants additionally argue that Plaintiff was not chilled from exercising his First Amendment rights, given that he was able to continue filing lawsuits. This argument is unavailing. A plaintiff need not show a complete chilling of his First Amendment rights;

8

### i. Nexus

A plaintiff bears the burden to show a causal connection between a defendant's retaliatory actions and his subsequent injury. *Hartman v. Moore*, 547 U.S. 250, 259 (2006); *see also Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Retaliatory motive may be shown by circumstantial evidence, such as the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence. *Ylst*, 351 F.3d at 1288-89 (timing, comments by guards, and fact that the same evidence used to validate the plaintiff had been previously rejected, raised triable issue of fact as to defendants' motive).

Here, Plaintiff argues that the Defendants validated him "in direct retaliation against" him because he won a judgment against CDCR in the prior lawsuit. Comp. ¶ 30. However, he alleges no facts to connect the two events, beyond the fact that the validation happened five months after the lawsuit. *See id*. ¶¶ 9-10. While circumstantial evidence may be considered by the Court, in this case, the timing alone is insufficient. *Accord Huskey*, 204 F.3d at 899 (plaintiff failed to establish a nexus in a lawsuit for retaliatory termination when he alleged nothing more than that he had made negative comments about his employer and was terminated "six or seven months afterwards"). Plaintiff offers no facts suggesting even that Defendants *knew* about his lawsuit. Plaintiff must do more to make plausible the nexus he alleges between his prior lawsuit and the subsequent validation by Defendants.

### ii. Legitimate correctional goal

Plaintiff bears the burden "of pleading and proving the absence of legitimate penological goals" for the conduct of the prison officials. *Ylst*, 351 F.3d at 1289 (internal quotation marks and citation omitted). "It is clear . . . that prisons have a legitimate penological interest in stopping prison gang activity." *Id.* "But, if, in fact, the defendants abused the gang validation procedure as a cover or a ruse to silence and punish [a prisoner] because he filed grievances, they cannot assert that [the] validation served a valid

rather, he must simply show that an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *See Rhodes*, 408 F.3d at 567-69 & n.11 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). Here, Plaintiff has made this showing.

9

penological purpose, even though he may have *arguably* ended up where he belonged." *Id.* (emphasis in original) (citing *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir. 1985)).

The Ninth Circuit's decision in *Ylst* applies here. While Defendants are correct that they have a legitimate penological interest in segregating gang members, the goal of the validation process generally does not insulate prison officials from an allegation that they used it pretextually or in retaliation. *Accord Rizzo,* 778 F.2d at 531-32 & n.4 (plaintiff alleging that official's acts were arbitrary and capricious "sufficiently alleged that the retaliatory acts were not a reasonable exercise of prison authority and that they did not serve any legitimate correctional goal"). The Court therefore rejects Defendants' argument that they are entitled to use the legitimacy of the validation process generally as shield against allegations that in this particular instance, the process was brought to bear arbitrarily or in order to retaliate or punish.

Because Plaintiff fails to plausibly allege a nexus between his protected activity in obtaining a judgment against CDCR and the gang validation he complains of, he fails to state a claim of retaliation. The claim is therefore DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

The Court finds that Plaintiff has exhausted his administrative remedies but has failed to state a claim of a denial of due process or retaliation. Accordingly, the complaint is DISMISSED WITHOUT PREJUDICE. Defendants motion to strike (Docket No. 36) is dismissed as moot because the Court did not rely on Plaintiff's declaration (Docket No. 31).

Any amended complaint shall be filed by Plaintiff on or before **August 21, 2013**.

**IT IS SO ORDERED.**

Dated: 7/29/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

10