UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE DALE PERCELLE,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN PEARSON, et al.,<br><br>Defendants. | Case No. 12-cv-05343-TEH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This matter came before this Court on September 14, 2015 for a hearing on Defendants' motion for summary judgment. After carefully reviewing the parties' written and oral arguments, this Court now GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff Steven Dale Percelle ("Plaintiff") was incarcerated at the Correctional Training Facility ("CTF") in Soledad, California from August 20, 2003 to March 16, 2013. SAC ¶ 19. For the first seven years of his sentence, he was on "A1A" status, meaning he was not in trouble and was earning good time and work time credits. *Id.*

After two years of receiving allegedly negligent medical care, on May 16, 2005, Plaintiff filed suit in United States District Court for the Northern District of California against several doctors at CTF. *Id.* ¶ 35. On September 23, 2009, this Court granted summary judgment in favor of the defendants on Plaintiff's Eighth Amendment claims. *Id.* Although Plaintiff alleges that the "[C]ourt advised [him] to take his state law claims to state court," *id.*, the order merely dismissed his state law claims without prejudice. Sept. 23, 2009 Order at 12, Percelle v. Rosenthal, et al., No. 05-cv-1998-WHA (Docket No. 104).

On January 4, 2010, Plaintiff filed suit in the Superior Court of California, County of Monterey, again alleging medical negligence by prison doctors. SAC ¶ 36. Plaintiff alleges that he properly served CDCR and after CDCR failed to respond, he moved for an entry of default judgment against it. *Id.* On June 23, 2010, default was entered as to CDCR, but not as to the prison doctors. Ex. 122 to Dresser Decl. Plaintiff alleges that his central file at CTF contained information about the default judgment.

Defendants contend that in November 2010, the Institutional Gang Investigation (IGI) unit at CTF received information that Plaintiff was participating in gang activity related to the Black Guerilla Family (BGF). Pearson Decl. ¶ 3; Arredondo Decl. ¶ 3. Thereafter, on November 18, 2010, Defendants Pearson, Williams and Arredondo, Institutional Gang Investigators for CDCR, searched Plaintiff's cell, and confiscated his address book and a photocopy of a prison library book authored by George Jackson. SAC ¶ 42-44. This information was documented in a November 18, 2010 confidential memorandum. Pearson Decl. ¶ 4; Arredondo Decl. ¶ 4. The address book and George Jackson book photocopy were designated as two "points" out of the three required for gang validation.

On December 8, 2010, Defendant Arredondo sent an email to a colleague, stating: "We hit Percelle and found two points, any information from [REDACTED][1] (Direct Link) would seal the deal." Ex. 110 of Plaintiff's Administrative Motion to File Under Seal. Also on December 8, 2010, the Monterey Superior Court Judge denied Plaintiff's default judgment without prejudice due to lack of expert evidence, and mailed a copy of the Order to the Office of the Attorney General. SAC ¶ 50.

In early 2011, Plaintiff sought expert testimony regarding damages to pursue the entry of default against CDCR. An expert, Robert Rehm, was appointed on April 11, and requested Plaintiff's records. SAC ¶ 51. On August 30, 2011 the Superior Court

---

[1] The redacted name is that of a confidential informant whose identification of Plaintiff as a gang member becomes the third point.

2

1  appointed a new damages expert, Scott Simon, who then wrote letters to CTF requesting
2  Plaintiff's records and requesting to interview him. *Id.* ¶ 55.

3  On September 27, 2011, Defendants documented in a confidential memorandum
4  that they had obtained a third source item – identification by a confidential informant who
5  was a validated BGF member. Pearson Decl. ¶ 7 & Exh. C.; Arredondo Decl. ¶ 7.
6  Defendants Pearson and Arredondo then prepared a validation package. Pearson Decl. ¶ 8;
7  Arredondo Decl. ¶ 8. On November 2, 2011, Defendants Brodie and Jefferson at the
8  Office of Correctional Safety (OCS) received the validation package for additional review.
9  Pearson Decl. ¶ 12; Arredondo Decl. ¶ 12. Jefferson Decl. ¶ 2; Brodie Decl. ¶ 2. Brodie
10 and Jefferson approved the package. Jefferson Decl. ¶ 3; Brodie Decl. ¶ 3.

11 On December 15, 2011, Defendants Jefferson and Brode officially validated
12 Plaintiff as a member of the BGF prison gang. SAC ¶ 110; Pearson Decl. ¶ 13. On
13 January 23, 2012, Plaintiff was placed in administrative segregation housing ("ad-seg").
14 Pearson Decl. ¶ 14; Arredondo Decl. ¶ 14.

15 On January 26, 2012, CTF's Institutional Classification Committee ("ICC") met to
16 review Plaintiff's gang validation, which they deemed warranted. Pearson Decl. ¶ 15;
17 Arredondo Decl. ¶ 15. Plaintiff was thereafter deemed a gang member and placed in the
18 segregated housing unit ("SHU"). *Id.*

19 Plaintiff alleges that his SHU placement deprived him of normal human interaction
20 and he was subsequently diagnosed with anxiety and depression. SAC ¶ 117, 123.
21 Because he could no longer earn good time and work credits while in the SHU, he was also
22 incarcerated for a longer period of time. *Id.* ¶ 124. Plaintiff was housed in the SHU from
23 January 23, 2012 up until his release on March 16, 2013. *Id.* ¶ 132.

24

25 **LEGAL STANDARD**

26 Summary judgment is appropriate when there is no genuine dispute as to material
27 facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).
28 Material facts are those that may affect the outcome of the case. *Anderson v. Liberty*

3

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the burden shifts to the opposing party, who must "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256.

A court need consider only the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact" and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

4

1    At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). If evidence produced by the parties is conflicting, the judge must assume the truth of the nonmoving party's evidence with respect to that fact. *Id.*

**DISCUSSION**

**I.    Defendants' Evidentiary Objections**

As a preliminary matter, Defendants object to evidence Plaintiff submitted concurrently with his opposition briefing, namely: (1) the declaration of Plaintiff Steven Percelle ("Percelle Decl."), Docket No. 242; (2) the declaration of William Dresser ("Dresser Decl."), Docket No. 245; and (3) the declaration of Richard Subia ("Subia Decl."), Docket No. 244.

This Court accordingly STRIKES paragraphs 5, 7, 13, 16, 21, 23, 25, 26, 32-34, 37, 39, 43-45, 48, 49, 53, 57, 58, 61-64, 68, 69, 70, 75-77, 82-87, 89-92, 98, 101, 105, 110-12, 114, 119, 120, 130-32, 135-39, 144, 147, 149-51, 153-56 and 159 from the Percelle Declaration, as being conclusory, stating legal arguments, and not stating any factual basis or personal knowledge for the conclusions and purported facts. These paragraphs violate Civil Local Rule 7-5(b), which states that "an affidavit or declaration[] may contain only facts … and must avoid conclusions and argument. Any statement made upon information or belief must specify the basis therefor." Civ. Local R. 7-5(b).

Furthermore, the allegations in Percelle's declaration are not sufficient to raise a genuine issue of material fact by themselves, and none of the impermissible arguments from Percelle's declaration were used in the analysis of Defendants' motion for summary judgment. "Deference to the non-moving party has some limits." *Patterson v. Apple Computer, Inc.*, No. C 04-0405PJH, 2005 WL 2277005 at *8 (N.D. Cal. Sept. 19, 2005). "Thus, a plaintiff cannot rest on the allegations in her pleadings to overcome a motion for summary judgment." *Id.* "Self-serving affidavits will not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory."

5

*Id.* All of the above-referenced paragraphs are too conclusory to be considered for this summary judgment motion.

The Court also STRIKES paragraphs 12 and 13 of the Declaration of William Dresser pursuant to Civil Local Rule 7-5(b). Paragraph 12 purports to summarize deposition transcripts and exhibits – summaries which, upon review, turn out to be inaccurate. Paragraph 13 is argumentative and conclusory, and does not establish the declarant's personal knowledge or basis for the statements therein.

Finally, this Court STRIKES paragraphs 15, 17, 20-24, 27, 30, 32, and 33 of the Subia declaration because these paragraphs are conclusory, in violation of Civil Local Rule 7-5(b). Many of the above paragraphs contain hearsay in violation of Rule 802 and/or mischaracterize deposition testimony by oversimplifying it.

## II.   Plaintiff's Request for Judicial Notice

Federal Rule of Evidence 201 provides the standard for judicial notice of adjudicative facts. According to this Rule, a court may judicially notice "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken at any stage of the proceeding. Fed. R. Evid. 201(d).

This Court GRANTS judicial notice of the provisions of the CDCR's Operations Manual requested by Plaintiff, concerning gang management. Exh. 119 in Plaintiff's MSJ Binder. This Court also GRANTS Plaintiff's request for judicial notice of Title 15 of the California Code of Regulations, Section 3378, which outlines the gang validation process, as well as the notice of approval of changes to Title 15. Exhs. 120-21 in Plaintiff's MSJ Binder. "[A] court may take judicial notice of records and reports of administrative bodies." *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (internal quotation marks omitted). These exhibits are not subject to reasonable dispute, they provide relevant information about the gang validation process, and no party

challenges their admission.

This Court GRANTS Plaintiff's request for judicial notice of filings in his state court proceeding. Exhs. 122-32 of Plaintiff's MSJ Binder. The scope of noticeable facts under Federal Rule of Evidence 201 includes "court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). These exhibits are not subject to reasonable dispute, and they are relevant to the timing of the state court litigation as compared to the alleged retaliatory actions. Furthermore, no party challenges admission of these exhibits.

Finally, this Court DENIES Plaintiff's requests for judicial notice of "facts from judicial decisions," including the Special Master's Final Report and holdings in *Madrid v. Woodford*. Exs. 117-18 in Plaintiff's MSJ Binder. These exhibits are not the proper subject of judicial notice, as they are subject to reasonable dispute and concern facts related to legal reasoning and the formulation of legal principles, not adjudicative facts under the purview of Federal Rule of Evidence 201. It would be acceptable for Plaintiff to cite to these materials in his briefs, but it is not an appropriate material for judicial notice. *See Blye v. Cal. Supreme Court*, No. CV-11-5046-DWM, 2014 WL 295022 (N.D. Cal. Jan. 21, 2014) ("A request for judicial notice is not a proper vehicle for legal argument.").

### III.   Plaintiff's First Amendment Retaliation Claim

In the prison context, a claim of retaliation under the First Amendment requires: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). In this case, the only disputed elements are the second and fifth elements: first, whether Defendants acted "because of" Plaintiffs activities, thus acted with a retaliatory motive; and second, whether Defendants' actions reasonably advanced a legitimate correctional goal.

### A.     Retaliatory Motive

To create a genuine issue of material fact as to retaliatory motive, Plaintiff must show that his litigation activities were a substantial or motivating factor for the adverse action (in this case, Defendants' validation of Plaintiff). *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Plaintiff must first offer evidence that Defendants knew of the protected activity. *Packnett v. Wingo*, 2015 WL 1478597 at *12 (N.D. Cal. May 30, 2014) (citing *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009)). Then, Plaintiff must show either direct evidence of retaliatory motive or at least one of three types of circumstantial evidence of that motive: (1) evidence of proximity in time between the protected act and the allegedly retaliatory decision; (2) evidence that defendants expressed opposition to the speech; or (3) evidence that the defendant's stated reason for the action was pretextual. *Corales*, 567 F.3d at 568 (internal citation and emphasis omitted); *McCollum v. Cal. Dep't of Corrs. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011).

#### 1.     Knowledge of Plaintiff's Protected Conduct

Deposition transcripts establish that Defendants Pearson, Arredondo, and Williams had access to, and typically reviewed, the central files of inmates during the gang validation process. Pearson Decl. at 166 (Docket No. 245-2). Information about Plaintiff's litigation activities was present in Plaintiff's central file. Thus, a reasonable jury could find that Defendants knew about Plaintiff's litigation activities.

#### 2.     Circumstantial Evidence of Motive

Plaintiff also alleges circumstantial evidence in the form of (1) the proximity in time between Plaintiff's litigation activities and his validation by Defendants; and (2) other evidence that the reason for the validation was pretextual, in the form of Defendant Arredondo's email stating that a direct link was needed to "seal the deal."

Retaliatory motive may be shown by the timing of the alleged retaliation, but there must be a nexus between the protected conduct and the alleged retaliation. *Huskey v. City*

*of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Otherwise, courts would be "engag[ing] in the logical fallacy of *post hoc, ergo propter hoc*, literally, "after this, therefore because of this." *Id.* (italics in original). "Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, plaintiff must show a nexus between the two." *Cortez v. Cate*, No. C09-03021-EJD, 2011 WL 4529927 at *5 (N.D. Cal. Sept. 29, 2011), *rev'd on other grounds*, 499 Fed. Appx. 658 (9th Cir. 2012).

There is no "bright line" rule for how soon after the protected activity the adverse action must be. However, cases that accept mere temporal proximity with no other evidence hold that the timing must be "very close." *See Clark Cty. Sch. Dist. v. Breeden*, 523 U.S. 268, 273-74 (2001) (surveying cases, finding three- and four-month periods too long, and "actions taken … 20 months later suggests, by itself, no causality at all"). When other evidence of retaliatory motive is present, courts have found that periods of time that would otherwise be too long may be sufficient. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("three to eight months is easily within a time range that can support an inference of retaliation").

Here, Plaintiff alleges periods of five months (between the entry of default and the initial search of Plaintiff's cell) and four months (between the communications from the medical expert to CTF's litigation coordinator and the confidential informant evidence), which would be insufficient to prove retaliatory motive absent other evidence. However, the email from Defendant Arredondo is additional circumstantial evidence that serves to strengthen the causal connection. In the context of this summary judgment motion, the Arredondo email combined with the inference drawn from the proximity in time provides sufficient evidence to at least raise a dispute of material fact as to retaliatory motive. *See Sorannos' Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315 (9th Cir. 1989) (noting that motivation is a question for the jury, thus inappropriate for summary judgment). Furthermore, the Arredondo email was sent on the same day as the default judgment hearing in state court, which serves as very close proximity evidence.

9

### B. Advancement of Legitimate Correctional Goal

It is well settled that prisons have a legitimate correctional interest in preventing prison gang activity and preserving the safety of the institution. *Stefanow v. McFadden*, 103 F.3d 1466, 1472 (9th Cir. 1996), *superseded on other grounds*, *Navajo Nation v. U.S. Forest Svc.*, 479 F.3d 1024 (9th Cir. 2007). However, "[p]rison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) ("if … the defendants abused the gang validation procedure as a cover or ruse to silence and punish [the inmate] because he filed grievances, they cannot assert that [his] validation served a valid correctional purpose").

Here, Defendants argue that they undertook Plaintiff's gang validation to maintain institution safety and security, by preventing further institution gang activity. However, Plaintiff points out the delay between the search of Plaintiff's cell (November 18, 2010), official validation of Plaintiff (December 15, 2011), and Plaintiff's move to administrative segregation (January 23, 2012). Plaintiff asserts that if Defendants' actions were motivated by legitimate safety concerns, Defendants would have executed the process faster. *See, e.g., Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1296 (9th Cir. 2007) (fact that social workers did not think allegations of abuse required immediate action weighs against finding of exigency).

This Court agrees that there is a genuine dispute such that a reasonable jury could find for Plaintiff on this issue. Thus, Defendants have not met their burden of showing that there is no dispute as to the issue of whether Plaintiff's validation served a legitimate correctional goal.

### IV. Plaintiff's State Law False Imprisonment Claim

Plaintiff raised a state law false imprisonment claim in his Second Amended Complaint, alleging that his gang validation caused him to lose credits that would have

10

reduced his prison term.  "The tort of false imprisonment is defined as the unlawful violation of the personal liberty of another." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997).  The confinement must be "without lawful privilege." *Molko v. Holy Spirit Assn.*, 46 Cal. 3d 1092, 1123 (1988).  Thus, in order to bring a claim for false imprisonment, Plaintiff must first show that his imprisonment was unlawful.  Plaintiff fails to do so.  In its July 29, 2013 Order in this case, this Court held that "California and federal law clearly establish that here is no right to work credits." (Docket No. 54).  *See also Toussant v. McCarthy*, 801 F.2d 1080, 1094 (9th Cir. 1986), *abrogated in part on other grounds, Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff was not entitled to good-time credits, and thus a shorter sentence, so even if an action by Defendants caused the non-accrual of credits, there was no deprivation of a cognizable liberty interest on which to base a false imprisonment claim.

Defendants made a strong argument against Plaintiff's false imprisonment claim in their Motion for Summary Judgment, to which Plaintiff did not respond at all in his Opposition.  The Court takes such silence as a concession, and therefore, in addition to the reasons stated above, GRANTS Defendants' motion for summary judgment as to the state law false imprisonment claim.

### IV.   Defendant's Qualified Immunity Argument

The doctrine of qualified immunity shields government officials from civil damages liability when performing discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).  Thus, government officials who "reasonably but mistakenly" conclude that their actions are lawful will be shielded from suit. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  The general purpose of qualified immunity is to allow government officials to "reasonably anticipate when their conduct may give rise to liability for damages." *Davis v.*

*Sherer*, 468 U.S. 183, 195 (1984). The qualified immunity analysis has two prongs: (1) whether the official violated the plaintiff's constitutional rights; and (2) whether the right violated was clearly established at the time of the official's conduct. *Pearson*, 555 U.S. at 232. Both prongs are legal determinations. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001).

"[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit[2], for qualified immunity purposes." *Pratt v. Rowland*, 65 F.3d 802, 806 n.4 (9th Cir. 1995) (citing *Schroeder v. Macdonald*, 55 F.3d 454, 461 (9th Cir. 1995)). This is because a prisoner's First Amendment right to file prison grievances and to pursue civil rights litigation is a right "of fundamental import." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003); *Schroeder*, 55 F.3d at 461; Quiroz v. Short, 85 F. Supp. 3d 1092, 1104 (N.D. Cal. 2015). "[P]urely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections." *Rhodes*, 408 F.3d at 567.

The relevant question becomes whether a reasonable prison official in Defendants' position would believe their alleged actions – using the gang validation process to punish a prisoner for exercising his First Amendment rights – were lawful, in light of clearly established law and the information Defendants possessed. In a First Amendment retaliation claim such as this, the answer must be no.

The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)) (internal quotation marks omitted). In this case, Plaintiff alleges that Defendants not only acted knowingly, but did so with malice – intending the illegality of their actions. A

---

[2] Other circuits recognize that retaliatory actions by prison officials are cognizable under Section 1983 also. *See, e.g., Frazier v. Dubois*, 922 F.2d 560, 561–62 (10th Cir.1990); *Madewell v. Roberts*, 909 F.2d 1203 (8th Cir.1990); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir.1985); *Buise v. Hudkins*, 584 F.2d 223 (7th Cir.1978).

12

reasonable prison official would not believe such retaliation was lawful. Thus, the Defendants in this case should not be shielded by the doctrine of qualified immunity.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment on the basis of Plaintiff's First Amendment retaliation claim is DENIED, because Plaintiff has set forth sufficient facts to raise a genuine issue to be decided by the trier of fact, not by this Court on summary judgment. Defendant's motion for summary judgment on the basis of qualified immunity is DENIED, because, viewing the evidence in the light most favorable to Plaintiff, reasonable officials in Defendants' positions would not believe retaliation was lawful. Defendant's motion for summary judgment on Plaintiff's false imprisonment claims is GRANTED.

**IT IS SO ORDERED.**

Dated:   10/01/15                                    _____
                                                     THELTON E. HENDERSON
                                                     United States District Judge

13