1

2                          UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4

5    STEVEN DALE PERCELLE,

6            Plaintiff,            Case No.  12-cv-05343-TEH

7        v.

                             **ORDER DENYING DEFENDANTS'**
8    STEVEN PEARSON, et al.,       **MOTION FOR JUDGMENT AS A**
                             **MATTER OF LAW**
9            Defendants.

10

11        This matter comes before the Court on a motion for judgment as a matter of law

12  brought by Defendants Steven Pearson, Derek Arredondo, Dylan Fletcher, and Mike

13  Williams (collectively, "Defendants"). For the reasons set forth below, the motion is

14  DENIED.

15

16  **BACKGROUND**

17        Plaintiff Steven Dale Percelle is a former state prisoner who contends that he was

18  retaliated against for engaging in litigation activity protected by the First Amendment.

19  While incarcerated at the Correctional Training Facility ("CTF") in Soledad, California,

20  Plaintiff sued the California Department of Corrections and Rehabilitation ("CDCR") for

21  negligent medical care. In retaliation for having filed and obtained an entry of default in

22  that lawsuit, Plaintiff claims that Defendants, who were correctional officers and members

23  of the Institutional Gang Investigation task force at CTF, retaliated against him by taking

24  actions that led to his validation as a gang member and placement in administrative

25  segregation. An eight-day jury trial was held, and, at the close of evidence, Defendants

26  timely moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).

27  While the motion was under the submission, the jury returned a verdict for Plaintiff.

28

United States District Court
Northern District of California

1   **LEGAL STANDARD**

2   Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of

3   law. Under Rule 50(a)(1),

> If a party has been fully heard on an issue during a jury trial
> and the court finds that a reasonable jury would not have a
> legally sufficient basis to find for the party on that issue, the
> court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law
> against the party on a claim or defense that, under the
> controlling law, can be maintained or defeated only with a
> favorable finding on that issue.

9   Once a party has been fully heard on an issue during a jury trial, the court may grant

10  a motion for judgment as a matter of law against the non-moving party only if "there is no

11  legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

12  Fed.R.Civ.P. 50(a); *Ritchie v. United States*, 451 F.3d 1019, 1022-23 (9th Cir. 2006).

13  In deciding a motion under Rule 50(a), the Court reviews all of the evidence and

14  draws all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson*

15  *Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The Court is not permitted to make

16  credibility determinations or weigh the evidence. *Id*. The salient inquiry is whether the

17  evidence "permits only one reasonable conclusion [.]" *Pavao v. Pagay*, 307 F.3d 915, 918

18  (9th Cir. 2002).

19

20  **DISCUSSION**

21  Defendants claim that there is no legally sufficient evidence for a reasonable jury to

22  find for Plaintiff on his First Amendment retaliation claim. They dispute that there is

23  sufficient evidence for Plaintiff to establish that: (1) Defendants took an adverse action; (2)

24  Defendants acted because of Plaintiff's protected conduct; (3) Defendants' actions chilled

25  Plaintiff's First Amendment rights; and (4) Defendants' actions did not reasonably

26  advance a legitimate correctional goal. The Court disagrees. In light of the evidence

27  presented at trial, the Court finds that a reasonable jury could conclude that Plaintiff

28  proved all the elements of his claim and was entitled to a favorable verdict.

2

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     Adverse Action

Defendants argue that there is no evidence that Defendants took any adverse actions against the Plaintiff. They claim that the evidence shows that Defendants did not have the authority to validate Plaintiff as a gang member. Secondly, they argue that the actions that Defendants took in searching Plaintiff's cell and preparing a validation package were "insufficient" to constitute adverse actions because inmates do not have a right to be free from cell searches and investigations into gang activity. Mot. at 2-3.

The Ninth Circuit has held that an action constitutes an adverse action when it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Even the mere threat of harm can be an adverse action, because the threat itself can have a chilling effect regardless of whether it is carried out. *See Brodheim v. Cry*, 684 F.3d 1262, 1270 (9th Cir. 2009). The adverse action need not be an independent constitutional violation. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). An otherwise permitted action can be the basis for a retaliation claim if performed with a retaliatory motive and lacking a legitimate correctional goal. *See Watison*, 668 F.3d at 1115 (9th Cir. 2012) (holding that an inmate had sufficiently alleged that an officer took an adverse action against him when the officer filed a disciplinary charge against that inmate which led to the inmate being placed in administrative segregation).

Here, the record contains evidence that Defendants Pearson, Williams and Arredondo searched Plaintiff's cell on November 18, 2010. Tr. 293:22. Three weeks later, Officer Arredondo sent an email to a gang investigator in another institution asking for information to "seal the deal" on Percelle's validation. Ex. 113. Close to a year later and after the receipt of a third source item needed for validation, Officer Pearson prepared a validation packet. Ex. D. Sergeant Williams "worked closely" with Officer Pearson and reviewed the validation packet. Tr. 424:15-424:2. Lieutenant Fletcher signed off on the validation packet before it was sent to the Office of Correctional Safety. Tr. 558-559.

1          A reasonable jury could have found that any and all of these actions constitute

2   adverse actions because they would chill a person of ordinary firmness from continuing to

3   engage in litigation activities. Put bluntly, a person of ordinary firmness may hesitate to

4   pursue his case against CDCR when, shortly after obtaining an entry of default in that case,

5   CDCR officers search his cell and open an investigation into whether he is a gang member.

6   In the very least, these actions constitute threat of harm and are enough for a reasonable

7   jury to find that Plaintiff has proved the first element of his retaliation claim.[1]

8

9   **II.     Retaliatory Motive**

10         Defendants next claim that there is no evidence to show that Defendants knew of

11   Plaintiff's lawsuit against medical staff at CTF and thus could not have acted "because of"

12   Plaintiff's protected activity. They also claim that there is insufficient evidence for a jury

13   to find that Defendants acted with a retaliatory motive.

14         Defendants are incorrect. There is sufficient circumstantial evidence on the record

15   from which the jury could infer that Defendants knew about Plaintiff's jailhouse lawyer

16   activities and his lawsuit against CDCR. First, Defendants admitted that when they

17   searched Plaintiff's cell, they saw legal papers among his belongings. Tr. 439:1. Second,

18   Officer Pearson said that he reviewed Plaintiff's Central File, which included many

19   references to Plaintiff's pending lawsuit against CDCR. Tr. 438:10-13; Ex. 138. Third,

20   Defendants could have learned about Plaintiff's lawsuit through the letters he received in

21   the mail from the court; Sergeant Williams explained that agents monitor the mail of

22   inmates they are investigating for gang activity. Tr. 341:9. Fourth, as Defendants

23   conceded, Plaintiff presented evidence that Deputy Attorney General Jennifer Nygaard and

24   CTF Litigation Coordinator Dan Pherigo knew of Plaintiff's lawsuit. Tr. 539:11-541:21,

25

26   _____

27   [1] The jury could also have found that Defendants took individual actions knowing that the
end of result of their actions would be the validation of Plaintiff as a gang member and
consequent placement in more restrictive housing. Tr. 431: 18-25. *See Watison*, 668 F.3d

28   at 115 ("being placed in administrative segregation constitutes an adverse action"); *see
also Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016).

United States District Court
Northern District of California

1   631-634. The jury could have inferred that either Ms. Nygaard or Mr. Pherigo had

2   communicated with medical professionals at CTF, who could have informed other staff,

3   including Defendants, of the substantial sum of money Plaintiff was about to recover from

4   CDCR.

5   　　　　Plaintiff also produced sufficient circumstantial evidence of retaliatory motive in

6   the form of (a) evidence of proximity in time between Plaintiff's litigation activities and

7   his validation by Defendants; and (b) evidence that Defendants' stated reasons for

8   investigating Plaintiff were pretextual. Jennifer Nyaagard admitted that she found out

9   about the entry of default and discussed it with her supervisor on November 10, 2010, a

10  week before Defendants searched Plaintiff's cell. Tr. 631: 14-25. Dan Pherigo recalled

11  receiving a letter from Bob Rehm, a damages expert appointed in Plaintiff's medical care

12  case, on May 18, 2011, three months before Defendants prepared and approved Plaintiff's

13  validation packet. Tr. 54:8-543:16.

14  　　　　Defendants argue that suspect timing is not, in itself, sufficient evidence of

15  retaliatory motive. Here, there is ample other evidence from which the jury could conclude

16  that Defendants used the gang validation process as a pretext for retaliation, thus acting

17  with a retaliatory motive. Defendants admitted that they received multiple trainings on the

18  requirements for validation listed in Title 15, the Department Operations Manual ("DOM")

19  and other gang validation manuals. Tr. 318-320; 517-520. Plaintiff's expert witness

20  Richard Subia testified that for a debriefing report to be used as a source item for

21  validation, it needs to identify an activity that the suspect performed in furtherance of the

22  gang. Tr. 765-765. Defendants testified that there was nothing in the debriefing report that

23  indicated that Plaintiff had committed an action in furtherance of the Black Guerrilla

24  Family gang. Tr. 866-867. The jury could have inferred that Defendants knew Plaintiff was

25  not a member of the gang and decided to attempt to validate him anyway.[2] The email from

26

27  ---

    [2] Evidence that the book "Blood in My Eye" came from the library and that Defendants
    knew Plaintiff did not communicate with any of the people whose names appeared in the
28  address book serves the same purpose—to show that Defendants acted with a retaliatory
    motive, not of out a legitimate concern that Plaintiff was a member of a gang. Tr. 308-310.

United States District Court
Northern District of California

1    Officer Arredondo, requesting a direct link to "seal the deal," further serves as evidence of

2    an express intent to see Plaintiff validated as a gang member. Ex. 113.

3

4    **III.     Chilling Effect**

5            Defendants argue that Plaintiff failed to present any evidence that Defendants'

6    actions would chill a person of ordinary firmness from future First Amendment activities.

7    They also claim there was no evidence that Plaintiff himself was deterred from pursuing

8    his medical claims as a result of Defendants' actions.

9            Defendants are wrong on both counts. First, Mr. Percelle testified that his litigation

10   activities were actually chilled: he had to ask the Monterey County Court to stay his

11   medical care case because he could not access the library as often from his placement in

12   administrative segregation. Tr. 877. Second, even if Defendants were not the ones who

13   actually validated Plaintiff and placed him in administrative segregation, the jury could

14   infer that their search of Plaintiff's cell and the ensuing investigation were enough to chill

15   a person of ordinary firmness from continuing to pursue legal action against CDCR.

16

17   **IV.     Legitimate Correctional Goal**

18           Defendants claim that all of the evidence presented at trial shows that they were

19   performing their job duties when they investigated Plaintiff and submitted a validation

20   packet. All of their actions, Defendants contend, were in furtherance of the correctional

21   goal of gang management.

22           In light of all the evidence presented at trial, the jury could have found that

23   Defendants used the gang validation process as a cover for retaliation. As the Ninth Circuit

24   has made clear, "a prison official who uses a validation procedure to obscure retaliation

25   'cannot assert that [his action] served a valid penological purpose, even though [the

26   prisoner] may have arguably ended up where he belonged.'" *Shepard*, 840 F.3d at 692

27   (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). The inquiry is not whether

28   Defendants had enough evidence to validate Plaintiff once they started investigating him;

United States District Court
Northern District of California

1   the inquiry is whether they had a retaliatory reason to investigate him in the first place. The

2   jury could have concluded that Defendants took actions that did not serve a legitimate

3   correctional goal because those actions were taken to punish or silence Mr. Percelle for his

4   protected conduct.

5

6   **CONCLUSION**

7        For the reasons state above, the Court finds that there is sufficient evidentiary basis

8   for a jury to return a verdict in favor Plaintiff. Defendants' motion for judgment as a matter

9   of law is hereby DENIED.

10

11   **IT IS SO ORDERED.**

12

13   Dated:   12/21/16     _____

14           THELTON E. HENDERSON
        United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7