UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DALE PERCELLE,<br>Plaintiff,<br>v.<br>STEVEN PEARSON, et al.,<br>Defendants. | Case No. 12-cv-05343-TEH<br><br>**ORDER GRANTING IN PART PLAINTIFF'S RENEWED MOTION FOR REASONABLE ATTORNEY'S FEES** |

Before the Court is Plaintiff's renewed motion for attorney's fees. ECF No. 434. On April 20, 2017, the Court found the matter suitable for resolution without oral argument, vacated the motion hearing, and ordered supplemental briefing on the question of whether the Prison Litigation Reform Act ("PLRA") restricted Plaintiff's attorney's fees in this case. ECF No. 441. Now, having carefully considered the motion papers and supplemental briefs, the Court GRANTS IN PART Plaintiff's motion for the reasons set forth below.

**BACKGROUND**

Plaintiff Steven Dale Percelle ("Plaintiff") is a former prisoner who sued four correctional officers, pursuant to 42 U.S.C. § 1983, for retaliation in violation of his First Amendment right to petition the courts for grievances. Plaintiff sought to hold Officers Steven Pearson, Derek Arredondo, Michael Williams and Dylan Fletcher ("Defendants") accountable for their retaliatory actions in investigating Plaintiff, falsely validating him as a gang member, and placing him in administrative segregation for fourteen months. He filed a *pro se* complaint on October 16, 2012 while he was still incarcerated. ECF No. 1. He was released from prison five months later, on March 16, 2013, and obtained counsel sometime in the middle of April 2013. Dresser Decl. in Support of First Fee Motion ("First Dresser Decl.") ¶ 27 (ECF No. 417). He was represented by his current counsel William Dresser through the remainder of the litigation.

1    An eight-day jury trial was held on December 8, 2016. The jury unanimously found that all four Defendants had retaliated against Percelle in violation of the First Amendment. ECF No. 404. They awarded Plaintiff $335,000 in compensatory damages, and $50,000 against each Defendant in punitive damages. The Court entered final judgment on January 3, 2017. ECF No. 413.

Plaintiff filed a timely motion for attorney's fees and costs on January 16, 2017. ECF No. 416. Defendants opposed (ECF No. 418) and Plaintiff replied (ECF No. 423). While that motion was pending, Defendants filed a renewed motion for judgment as a matter of law, remittitur and new trial (ECF No. 419), which the Court denied on March 14, 2017 (ECF No. 433). On March 27, 2017, Plaintiff filed a second motion for attorney's fees (ECF No. 434), which was subsequently briefed (ECF Nos. 436, 439). The present order addresses both motions for attorney's fees and fully resolves the case.

**LEGAL STANDARD**

Pursuant to 42 U.S.C. § 1988, "[a] party who prevails on a claim under [Section] 1983 is entitled to reasonable attorney's fees unless special circumstances would render such an award unjust." *Chaudhry v. City of Los Angeles,* 751 F.3d 1096, 1110 (9th Cir. 2014). Since the statute was passed "to attract competent counsel to prosecute civil rights cases," courts have held that "fee awards should be the rule rather than the exception." *Barnard v. Theobald,* 721 F.3d 1069, 1077 (9th Cir. 2013). District courts "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008).

To determine the amount of a reasonable fee under Section 1988, a district court typically proceeds in two steps. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013). First, the court "appl[ies] ... the 'lodestar' method to determine what constitutes a reasonable attorney's fee" by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Costa v. Comm'r of Soc. Security*

2

*Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). Second, the court may adjust the presumptively reasonable lodestar amount based on factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir, 1975), that have not been subsumed in the lodestar calculation. *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000).

**ANALYSIS**

Plaintiff seeks a total of $454,007.91 in attorney's fees and expenses, broken down as follows: (1) $423,407.41 in fees accrued before the filing of Plaintiff's first fee motion on January 16, 2017; (2) $28,150.50 in additional fees accrued on the first fee motion and the opposition to Defendants' motion for a new trial; (3) $2,450.00 as fees and costs in preparing the second fee motion.[1] Defendants object to the amount requested on the grounds that the limitations imposed by the PLRA are applicable, that the fees requested are not sufficiently documented, and that Plaintiff's counsel was unprofessional and difficult. In addition, Defendants argue that the Court should disregard Plaintiff's second motion for attorney's fees because Plaintiff did not seek or receive leave to file a supplemental fee motion.

As a preliminary matter, the Court addresses Defendants' objection to the filing of Plaintiff's second motion for attorney's fees. Although Defendants are correct that Plaintiff's counsel should have sought leave to file a supplemental brief in support of his initial fee motion, the Court finds that Defendants were not prejudiced by the filing of the second fee motion. Plaintiff's counsel did not raise any new arguments or seek previously undisclosed fees and costs, other than the fees accrued after the filing of the first fee motion. The Court deems it proper to consider the supplemental motion though, as explained below, fees for the preparation of that motion will not be awarded.

---

[1] In addition, Plaintiff filed a Bill of Costs for the amount of $18,761.40. After considering Defendants' objections, the Clerk of Court taxed the bill, deemed certain costs unrecoverable under Civil Local Rule 54-3, and awarded Plaintiff $13,349.86 for allowable costs. ECF No. 437.

3

## I. Applicability of the PLRA

Defendants' first substantive argument is that Plaintiff's hourly rate is excessive under the PLRA. Plaintiff contends that the PLRA limitation on attorney's fees does not apply to the present case because even though Plaintiff was incarcerated when he filed the case, he was released five months later and remained a free man during the entire course of the litigation and his counsel's representation.

The PLRA limitation on attorney's fees applies to "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of [Title 42 U.S.C.]" 42 U.S.C. § 1997e(d)(1). It is undisputed that in this case Section 1988 authorizes the award of attorney's fees because Plaintiff was the prevailing party in a lawsuit under Section 1983. The question is whether the PLRA applies to the calculation of Plaintiff's attorney's fees given that Plaintiff was a prisoner when the action was "brought" but that he was no longer "confined to any [...] prison" when counsel was retained, the fees in question were accrued, and judgment was entered. *Id*.

After a thorough consideration of the arguments made and cases cited in the parties' supplemental briefs on this issue, the Court finds that the PLRA limits the award of attorney's fees that can be awarded in the present case. The plain text of the statute, although not unambiguous, is most naturally read as restricting attorney's fees in any action "brought by a prisoner," meaning filed or commenced by a prisoner. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). The second clause—"who is confined to any jail, prison, or other correctional facility" — does not require that the person is confined at the time the motion for attorney's fees is resolved; it simply clarifies that the fee cap applies only to prisoners in correctional facilities, not those confined in medical or mental health institutions. *See Perez v. Westchester Cty. Dep't of Corr.*, 587 F.3d 143, 155 (2d Cir. 2009).

4

Even though the Ninth Circuit has not ruled on the exact issue presented by the circumstances of Plaintiff's release from prison, it has held in other contexts that the PLRA applies to cases brought by prisoners confined in correctional facilities and that cases are considered "brought" at the time they are filed. *See, e.g., Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (holding that prisoners within the definition of Section 1997e are "only individuals who, *at the time they seek to file their civil actions*, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses") (emphasis added). In the context of the need to exhaust administrative remedies, the circuit court held that a "complaint is 'brought' by a prisoner when he submits it to the court." *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). In *Kimbrough*, while deciding whether counsel's fees in securing a temporary restraining order are restricted by the PLRA, the Ninth Circuit once again intimated that an action is "brought" for the purposes of the PLRA when it is "instituted." *Kimbrough v. California*, 609 F.3d 1027, 1031 (9th Cir. 2010) (explaining that "because Kimbrough was incarcerated at the time this action was instituted, '[h]is recovery of fees is [ ] restricted by the PLRA.'") It is well-established that identical words used in different parts of the same act are presumed to have the same meaning. *See Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932).

Other circuits have also held that it is plaintiff's status at the time of filing, not at some subsequent stage of the proceedings, that determines whether counsel's fees are limited by the PLRA. The Eight Circuit found that the PLRA does not apply to a juvenile who is no longer detained but who brings suit regarding a violation that took place in jail. *See Doe By & Through Doe v. Washington Cty.*, 150 F.3d 920, 924 (8th Cir. 1998) ("The PLRA unambiguously applies to only those suits filed by prisoners.") The Second Circuit disagreed with the decision of a New York district court, which had held that where, as here, a prisoner was released shortly after filing suit, the PLRA did not apply to counsel's request for fees. *See Perez*, 587 F.3d at 154-55 (discussing *Morris v. Eversley*, 343 F. Supp. 2d 234, 239 (S.D.N.Y. 2004)). The Second Circuit squarely rejected the lower court's reasoning, finding that Congress intended to make a distinction between prisoners

5

and former prisoners because Congress found prisoners were more likely to bring frivolous actions. *See id.* at 155. The Eleventh Circuit in *Harris* similarly found that Congress made confinement status at the time of filing the criterion of PLRA applicability on purpose. *See Harris v. Garner*, 216 F.3d 970, 978 (11th Cir. 2000) (noting Congressional findings that prisoners have a lower opportunity cost for their time than other indigent litigants, which makes them more likely to file frivolous actions).

Plaintiff's arguments are not persuasive enough to warrant a departure from the interpretation of the statute that most courts have embraced. Plaintiff argues that applying the PLRA to a case filed by a prisoner who is no longer incarcerated by the time that the case is resolved, will lead to more litigation, not less, because such a person would be incentivized to dismiss his or her case and refile it after being released. While that is true, it is clear from the legislative history that Congress was concerned with the number of cases filed by prisoners, not by former prisoners. *See Harris*, 216 F.3d at 977-78 (discussing floor statements by Senators Dole and Kyl, two of the principal architects of the PLRA); *see also Kimbrough*, 609 F.3d at 1031 (citing *Webb v. Ada County*, 285 F.3d 829, 834 (9th Cir. 2002)) ("Congress enacted the PLRA for the purpose of 'curtail[ing] frivolous prisoners' suits and to minimize the costs—which are borne by taxpayers—associated with those suits."). If a prisoner has an incentive to wait to be released before filing suit, or if a former prisoner dismisses an old suit and files a new one, which he pursues as a free person, the intent of the legislature is effectuated—there are less prisoner-initiated cases for courts to adjudicate.

Plaintiff further argues that creating a distinction between the attorney's fees awarded to former prisoners and those awarded to individuals who were never incarcerated violates the Equal Protection clause of the Fifth Amendment. The premise of Plaintiff's argument is incorrect—it is not all former prisoners who are limited by the PLRA, it is those former prisoners who, like Plaintiff, filed suit while they were incarcerated. The Ninth Circuit concluded in *Madrid* that the distinction between suits filed by prisoners and

6

those filed by non-prisoners survives rational basis review and does not violate the Constitution. *See Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999).

In sum, the Court agrees with Defendants that because Plaintiff was a prisoner when he brought suit, the PLRA imposes limits on the attorney's fees he can recover.

## II. Computation of the Lodestar

Generally, a district court begins its calculation of fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988. *See Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The PLRA alters the lodestar method in three fundamental ways. First, rather than hours reasonably expended in the litigation, hours used to determine the fee award are limited to those that are: (1) directly and reasonably incurred in proving an actual violation of the plaintiff's rights; and (2) proportionally related to the court ordered relief, or directly and reasonably incurred in enforcing the relief ordered for the violation. 42 U.S.C. § 1997e(d)(1). Second, in actions resulting in monetary judgments, the total amount of the attorney's fees award associated with the money judgment is limited to 150 percent of the judgment. *Id*. § 1997e(d)(2); *see Jimenez v. Franklin*, 680 F.3d 1096, 1100 (9th Cir. 2012). Third, the hourly rate used as the basis for a fee award is limited to 150 percent of the hourly rate used for paying appointed counsel under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. 42 U.S.C. § 1997e(d)(3). Hereinafter, the "PLRA rate" refers to the rate allowable under the PLRA, which equals 150 percent of the CJA rate.

### A. Compensable Hours

Plaintiff's counsel claims that he should be compensated for a total of 1,858.12 hours. In support of this figure, he has submitted detailed time records laying out the specific hours spent on each task related to this litigation. Defendants state conclusively

7

that Plaintiff's fees are insufficiently documented because the timesheets include blocks of time billed with inadequate descriptions. The only example of such insufficient documentation they cite concerns the seven hours Plaintiff attempts to bill for the preparation of the second fee motion.

Under established law, the fee applicant bears the burden of documenting hours expended in the litigation and must submit evidence in support of the hours claimed. *See Hensley,* 461 U.S. at 433, 437; *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). The party opposing the fee application has a burden of rebuttal that requires submission of evidence challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. *See Blum v. Stenson,* 465 U.S. 886, 892 n. 5 (1984); *Toussaint v. McCarthy,* 826 F.2d 901, 904 (9th Cir. 1987).

Defendants have met their burden of rebuttal only on their claim that the seven hours sought for Plaintiff's second fee motion are unsupported by evidence. None of the billing statements included in Plaintiff's counsel's declaration provide a description or breakdown of the hours. Plaintiff's counsel will not be compensated for these hours. But the success of Defendants' opposition only goes this far. Defendants fail to meet their burden of rebuttal on their broader claim regarding the documentation of Plaintiff's hours. They do not cite to a single example of block billing, though such examples exist, nor do they submit evidence challenging the accuracy or reasonableness of the hours Plaintiff's counsel has recorded. The Court is not required to engage in an hour-by-hour fee analysis of the fee request when presented with such a voluminous fee application, as the one here. See *Gates*, 987 F.2d at 1399. Rather, the Court has the authority to make across-the-board percentage cuts either in the number of hours or the final lodestar figure as a way of "trimming the fat from a fee application." *Id.*; *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (where a fee applicant chooses to block bill some of its time, the court may "impose a reduction" as long it provides a reasoned explanation for the reduction). No such percentage cuts are necessary here because any perceived increase in time due to block billing would be offset by the fact that Plaintiff's counsel has exercised

billing judgment and not billed for other compensable tasks, such as meetings with his client. First Dresser Decl. ¶ 69.

Nonetheless, an adjustment to the total hours claimed by Plaintiff's counsel is necessary in order to take into account time billed for the work of paralegals and law clerks. Plaintiff's motions provide billing statements for various parts of the litigation but since the PLRA changes the hourly rate at which counsel's services can be billed, the Court had to deduce the hours worked from the list of amounts billed. The Court arrived at the conclusion that Plaintiff's counsel is seeking compensation for 1,858.12 hours spent on litigation by: (1) starting with the 1747.32 hours spent on the case by counsel and his staff up to the date of the judgment (Ex. 1 to First Dresser Decl. at 107); (2) subtracting 27.80 hours as time spent on claims not attributable to the successful First Amendment Retaliation claim against the named Defendants (Exh. 3 to First Dresser Decl.; First Dresser Decl. ¶ 63); and (3) adding 138.60 hours[2] spent preparing the first fee motion and opposing Defendants' motion for judgment as a matter of law, remittitur and new trial. Ex. 11 to Dresser Decl. in Support of Second Fee Motion ("Second Dresser Decl.") (ECF No. 435). As discussed above, the 7.00 hours billed by Plaintiff's counsel for the second fee motion are not supported by evidence and will not be compensated.

Of the 1,858.12 hours claimed by Plaintiff's counsel, only 1,313.20 are actually attributable to his personal work. The other 544.92 hours represent time spent by paralegals and law clerks on the case.[3] Plaintiff's counsel delineates two different billing rates for their work depending on the nature of the work: $75 per hour for legal work and $45 per hour for "other services which are not merely administrative activities." First Dresser Decl. ¶ 12(H). Although this distinction is rather vaguely supported by the record,

---

[2] The Court added the hours of the three separate billing statements included in Plaintiff's counsel's declaration to the second fee motion: 3.30 hours (Ex. 11 to Second Dresser Decl. at 5) + 61.90 hours (*Id*. at 9) + 73.40 hours (*Id*. at 14) = 138.60 hours.

[3] The Court reviewed all billing statements and calculated the number of hours that were billed at $75 per hour and $45 per hour respectively. It combined those hours to arrive at the number of non-attorney hours billed. It subtracted the non-attorney hours (544.92) from the total number of hours billed (1,858.12) to arrive at the number of attorney hours (1313.20).

9

it is not challenged by Defendants, and the Court finds it necessary to separate both sets of non-attorney hours from the attorney hours in order to calculate the correct final fee award. Of the 544.92 hours spent by support staff on the case, 127.80 hours are billed at $75 per hour and 417.12 hours are billed at $45 per hour.

The Court finds that the 1,313.20 hours attributable to Plaintiff's counsel were directly and reasonably incurred in proving a violation of Plaintiff's First Amendment rights. Counsel spent over three years diligently litigating the case, facing discovery challenges, and vigorously opposing contested motions *in limine*, among others. First Dresser Decl. ¶¶ 25-62. Considering the total monetary judgment awarded to Plaintiff of $535,000.00, the time expended appears proportionately related to the court-ordered relief in this case.

### B. The PLRA Hourly Rate

The hourly rate of Plaintiff's counsel, as represented in his motions for attorney's fees, ranges from $275 to $350 per hour. First Dresser Decl. ¶ 12(G). Although his rate is reasonable and below the prevailing market rate for an attorney of his level of experience in this district, the Court must further restrict his fees under the PLRA.

As Defendants state, Plaintiff's counsel's hourly rate should be capped at 150 percent of the rate established under Section 3006A of Title 18. 42 U.S.C. § 1997e(d)(3). Section 3006A sets the current CJA rate for court-appointed counsel in felony and misdemeanor cases at $132 per hour.[4] Defendants do not dispute that the maximum PLRA multiplier of 150 percent should be applied in this case, nor do they dispute that the current rate should apply instead of rates for past years when counsel's services were rendered.

---

[4] The Ninth Circuit has stated the baseline hourly rate is the amount authorized by the Judicial Conference, which is published in Guide to Judiciary Policy. *See* 7 Guide to Judiciary Policy § 230.16; *Webb v. Ada Cnty.,* 285 F.3d 829, 839 (9th Cir. 2002). On May 5, 2017, while this motion was pending, the CJA rate increased from $129 per hour to $132 per hour.

10

The Court agrees and finds that Plaintiff's counsel's hourly rate under the PLRA is $198 per hour ($132 x 1.5 = $198).

The plain language of the PLRA does not distinguish between the maximum hourly rate applicable to counsel and the maximum hourly rate applicable to non-attorney support staff. Rather, Section 1997e(d)(3) sets forth the maximum hourly rate applicable to an award of "attorney's fees," a term the Supreme Court has construed to include paralegal fees. *See Missouri v. Jenkins,* 491 U.S. 274, 285 (1989). Accordingly, the Ninth Circuit interpreted the PLRA to permit an award of paralegal fees based on hourly rates up to, but not exceeding, the rate cap set for attorneys. *See Perez v. Cate*, 632 F.3d 553, 557-58 (9th Cir. 2011). Here, Plaintiff has requested hourly rates of $75 per hour for legal work and $45 per hour for other non-clerical work performed by paralegals and law clerks. Since these rates are reasonable and do not exceed the attorney hourly rate of $198 per hour, the Court will use them to calculate the final fee award in this case. *See Barjon v. Dalton*, 132 F.3d 496, 503 (9th Cir. 1997) (presuming that an attorney reduced the value of a request for "law clerk costs" to account for clerk's lack of experience and expertise).

### C. The Lodestar Figure

The Court arrives at the lodestar figure by multiplying the number of hours directly and reasonably expended in proving the violation of Plaintiff's rights by the PLRA rate, as follows:

| | Compensable Hours | PLRA Rate | Fee Award |
|---|---|---|---|
| William Dresser | 1,313.20 hours | $198.00 per hour | $260,013.60 |
| Law clerk and paralegal legal work | 127.80 hours | $75.00 per hour | $9,585.00 |
| Law clerk and paralegal support non-clerical work | 417.12 hours | $45.00 per hour | $18,770.40 |
| | | | TOTAL: $288,369.00 |

11

Plaintiff seeks to recover $123.57 in costs in addition to the costs he submitted in his Bill of Costs dated January 15, 2017. Ex. 11 to Second Dresser Decl. Of those, $33.57 were accrued in the filing of the first fee motion (Ex.11 at 9) and $90.00 were accrued while opposing Defendants' motion for a new trial. *Id*. Plaintiff's only notation next to the bill for these costs is "office copying at .15 per page." *Id*. at 9, 14. Defendants correctly point out that without an explanation of what was being copied, the Court is unable to determine whether those costs are recoverable under Civil Local Rule 54-3. Plaintiff's counsel will not be awarded any costs above the costs already taxed by the Clerk of the Court.

## IV. Adjustment to the Lodestar

In appropriate cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70. "The court need not consider all ... factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (citing *Kessler v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n.1 (9th Cir.1981)). Although the PLRA limits the hours and hourly rate used in calculating the lodestar figure, it does not restrict a district court's authority to enhance the lodestar figure based on non-subsumed factors. *See Kelly v. Wengler*, 822 F.3d 1085, 1100 (9th Cir. 2016).

Defendants argue that the lodestar figure needs to be reduced by 25 percent because of Plaintiff's counsel's "unprofessional behavior throughout the course of this litigation and excessive focus on irrelevant topics." Opp'n to First Mot. at 5 (ECF No. 418). Generally, quality of representation is considered at the lodestar stage in determining a reasonable hourly rate. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000). However, since Defendants did not suggest diminishing counsel's hourly rate under the PLRA to less than 150 percent of the CJA amount, the Court will consider their argument as a basis for an adjustment to the lodestar amount. In doing so, the Court will also take into account *Kerr* factors relevant to this litigation and not subsumed in the initial lodestar calculation. *See Kerr*, 526 F.2d at 70.

Defendants are correct that the Court admonished Plaintiff's counsel on a number of occasions in order to keep him focused on the legal and factual parameters of the single claim tried before a jury—First Amendment Retaliation. Plaintiff's zealous representation may have caused some delay to the Court and inconvenience to the opposing party but it did not rise to the level of unprofessional conduct that warrants a fee reduction. Plaintiff's counsel took a challenging, undesirable, labor-intensive case of a former prisoner, spent years litigating it, and obtained a successful result. He took the case on a contingent-fee basis and bore the very real risk of losing the case. *See Bernardi v. Yeutter*, 951 F.2d 971, 975 (9th Cir. 1991) (holding that a district court may enhance a fee award when payment for attorney's services was contingent upon the success of client's claim). The results he obtained are measured not only by the amount of recovery for his client, which was substantial, but also by the public purpose the litigation served. See *Morales v. City of San Rafael,* 96 F.3d 357, 365 (9th Cir.1996). By vindicating Plaintiff's constitutional rights, his attorney was able to play a part in safeguarding the rights of other prisoners to be free from retaliatory placement in administrative segregation. Thus, the Court finds that neither a downward nor an upward adjustment to the lodestar figure is warranted in this case. Defendants have not demonstrated a convincing reason to reduce Plaintiff's fee award, nor has Plaintiff met his burden of demonstrating a justification for an enhancement. *See Kelly*,

822 F.3d at 1102 (explaining that the fee applicant must provide specific evidence to prove "that an enhancement is necessary").

## V. Satisfaction of the Fee Amount

Section 1997e(d)(2) of the PLRA provides that a portion of the monetary damages award obtained by Plaintiff, not to exceed 25 percent thereof, shall be applied toward satisfaction of the Defendants' liability for Plaintiff's attorney's fees. The decisional law holds that 25 percent is a maximum percentage, and that district courts have discretion to apply a lower percentage. *See Kahle v. Leonard*, 563 F.3d 736 (8th Cir. 2008) (stressing that district court has "broad discretion" in determining appropriate percentage under Section 1997e(e)(2)); *Jimenez*, 680 F.3d at 1098 (referring to a district court's decision that $5000 out of Plaintiff's $365,001 judgment are to cover a portion of counsel's fee award). The balance of the fee award is paid to the prevailing plaintiff by the losing defendants, provided that the total fee award is "not greater than 150 percent" of the plaintiff's money judgment. 42 U.S.C. § 1997e(d)(2); *see Jimenez*, 680 F.3d at 1100.

The Court determines that 10 percent, or $53,500, of Plaintiff's judgment should be applied against the awarded attorney's fees. Because the total fee award of $288,369.00 is significantly less than 150 percent of Plaintiff's money judgment, Defendants will be responsible for paying the balance of the fee award, which amounts to $234,869.00. Ten percent is more than a *de minimus* amount, honoring the legislature's intent to hold the plaintiff responsible for a portion of the attorney's fees awarded. It is also an amount that reflects the degree of Defendants' culpability and the potential that a fee award may deter other correctional officers from unlawful conduct.[5] The jury found that all four Defendants

---

[5] The Court finds the Eight Circuit's decision in *Kahle* to be persuasive authority on what factors a court should consider when determining the percentage of an award to apply to attorney's fees. *See Kahle*, 563 F.3d at 736. The factors enumerated in *Kahle* are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; and (4) the relative merits of the parties' positions. *Id*.

14

had acted maliciously, oppressively, or in reckless disregard of Plaintiff's rights, which signals to the Court a degree of blameworthiness that it had to take into account.

**CONCLUSION**

For the reasons discussed above, Plaintiff's renewed motion for attorney's fees is GRANTED IN PART and DENIED IN PART. Plaintiff's counsel, William Dresser, is awarded $288,369.00 in attorney's fees and, as previously determined by the Clerk of the Court, $13,349.86 in costs. Defendants are jointly and severally liable for a total of $248,218.86, which represents the sum of costs and attorney's fees not payable from Plaintiff's damages award. Defendants shall pay this amount forthwith.

**IT IS SO ORDERED.**

Dated: 06/22/17 _____
THELTON E. HENDERSON
United States District Judge